UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY AUSAMA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2007** |
| **C&G BOATS, INC., ET AL** | **SECTION "L" (3)** |

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment by Plaintiff Terry Ausama. R. Doc. 28. Defendants oppose the motion, and Plaintiff replied. R. Docs. 34; 37. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

I.     **BACKGROUND**

This case arises out of personal injuries allegedly sustained by Plaintiff Terry Ausama while attempting to transfer by swing rope from a fixed platform in the Gulf of Mexico to the deck of the *Ms. Emelie Rose* a vessel owned, operated and crewed by Defendant M N M Boats, Inc. and chartered by Defendant C & G Boats, Inc.[1] On December 16, 2018, Plaintiff was departing the *Ms. Emelie Rose* when he allegedly fell and fractured his neck, hitting the edge of the boat and angled brace. Plaintiff filed suit against Defendants asserting claims for negligence and/or gross negligence and unseaworthiness under general maritime law. R. Doc. 19. Plaintiff seeks damages for past and future mental anguish, loss of earnings and earning capacity, permanent disfigurement, past and future physical pain and suffering, and punitive damages. *Id.* at ¶ 7.

---

[1] C & C Boats, Inc. maintains that it is an improper party to this case because it did not "own, operate or control the MN Ms. Emelie Rose and did not employ her crew members or Mr. Ausama."

1

## II. PRESENT MOTION

Plaintiff seeks partial summary judgement on one specific issue of negligence—that Defendants were negligent in how the vessel was positioned with respect to the fixed platform at the time of the swing rope transfer and that a safer vessel position was available. R. Doc. 28. Plaintiff argues, based on the testimony of Capt. Reginald Carmel, that "stern-to the platform" vessel positioning, wherein the vessel is perpendicular to the platform, is safer than the oblique angle used by the captain on December 16, 2018. Plaintiff contends that Capt. Carmel selected a comparatively unsafe method of positioning the vessel when a safer method was available and failed to adjust his strategy when he perceived that Ausama might be having some difficulty with the swing. For this reason, Plaintiff requests that the Court find the captain negligent in choosing an unsafe method of positioning the vessel.

In opposition, Defendants argue that the motion must be denied because Plaintiff failed to cite to any law, regulation, policy, industry standard, or expert to support his allegation that another vessel position was "safer" or required. R. Doc. 32. In fact, Defendants counter that the M/V Emelie Rose's position vis-a-vis the platform at the time of the incident was customary, reasonable, and safe. In support of this contention, Defendants offer a swing rope transfer training video by Falk Alford, which was the third-party that provided offshore training to Mr. Ausama. Defendants argue that the transfer depicted in that video occurred where the boat is clearly a number of feet from the platform and at an oblique angel, similar to the way the M/V Emelie Rose was on the date of the incident. R. Doc. 32-9. Defendants also cite to testimony from other employees who transferred by rope swing before and after Mr. Ausama regarding the adequacy of the vessel's position.

Plaintiff replied and emphasized that he was seeking partial summary judgment on a narrow issue of whether Captain Carmel was negligent in failing to position the boat "stern in." R. Doc. 37. Plaintiff concedes that whether the vessel moved at some point after he began his swing and whether he was negligent are disputed. Still, Plaintiff argues that the unambiguous testimony of Captain Carmel proves that stern-to is the safest and preferred method for a swing rope transfer; therefore, partial summary judgment on this matter is warranted.

### III. LAW & ANALYSIS

#### a. Summary Judgment

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the moving party has met its Rule 56(c) burden, the non-movant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). Furthermore, "[t]he non-movant cannot avoid summary judgment ... by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. Id. at 255.

### b. Whether the Vessel's Positioning Supports a Finding of Negligence

"To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (citing I*n re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir.1991)); *see also Withhart v. Otto Candie*s, LLC, 431 F.3d 840, 842 (5th Cit. 2005) ("The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law.").

It is not disputed that Plaintiff was a passenger with respect to the Defendants' vessel on the day of the rope swing transfer.[2] Under general maritime law, a shipowner owes "the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generate Transatlantique,* 358 U.S. 625, 630 (1959). Included within this duty is the duty to provide passengers with a reasonably safe means of ingress and egress. *Hebert v. Specialized Envtl. Res. LLC*, CIV.A. 12-0071, 2013 WL 1215443, at *5 (E.D. La. Mar. 25, 2013) (citing *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1216 (5th Cir. 1993); *Tittle v. Aldacosta,* 544 F.2d 752, 755 (5th Cir.1977)); *see also Ross v. John E. Graham & Son*s, 1999 WL 511360, * 1 (5th Cir.1999) ("A vessel owner must provide a passenger with a reasonably safe means of boarding or disembarking, including the provision of proper gangways, landing places, and personnel assistance.").

Here, Plaintiff seeks partial summary judgment on Defendants' negligence, arguing that Captain Carmel was negligent in failing to position the boat stern-in to the platform prior to

---

[2] At the time of the rope swing transfer, Plaintiff was welder employed by Performance Energy Services, LLC and working on offshore platforms owned and/or operated by Arena Offshore, LP ("Arena"). These entities are not parties to the instant case.

Plaintiff's swing transfer. R. Doc. 28-1. Plaintiff insists that this vessel configuration is the safest because it gives the person swinging the widest possible target for landing and easy access to the handrail. *Id.* at 8. Plaintiff argues that the failure to back the *Ms. Emilie Rose* stern-in to the platform, despite the feasibility of that position on the date of the incident, constitutes negligence on behalf of the vessel defendants. On the other hand, Defendants maintain that they acted reasonably under the circumstances and that the vessel's position, which was "up against and touching the platform," was in fact reasonable, safe, and in accordance with Plaintiff's training. R. Doc. 32 at 11.

"Summary judgment is rarely granted in maritime negligence cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact." *Luwisch v. Am. Marine Corp.,* No. CV 17-3241, 2018 WL 3031887, at *4 (E.D. La. June 18, 2018) (internal citation omitted). Here, genuine issues of material fact exist as to whether the vessel's position was reasonable that preclude partial summary judgment. At least 12 other crew members, including two of Mr. Ausama's supervisors and the person-in-charge (PIC) on the platform,[3] successfully transferred by rope, before and after Mr. Ausama on the day of the incident. Plaintiff relies mainly on the deposition of Capt. Carmel for his argument that the stern-to method is safer and preferred. However, upon close examination, the Court finds that Capt. Carmel's testimony on this issue is more equivocal than Plaintiff suggests. Capt. Carmel repeatedly stated that the ideal position of the vessel depends on the various forces acting on the vessel, mainly the wind, seas, and current conditions. R. Doc. 28 at 13-14. In fact, Capt. Carmel testified that he had never backed-up the vessel "stern-to" the platform on that particular rope. R. Doc. 32-8 at 57:13-18.

---

[3] Arena had an agreement in place with Danos, LLC to provide, among other things a person-in-charge ("PIC"), on the platform for the subject work and where the swing rope transfers took place.

In addition, Gary Bergeron, Mr. Ausama's superintendent, testified that the *M/V Emelie Rose* was not positioned incorrectly with regard to the platform, and if it had been, he would not have allowed the swing rope transfer to take place. R. Doc. 32-6 at 37:24-38:15. Similarly, Jeff Williams, the PIC, also testified that prior to the job starting, he confirmed that the boat was in a "good and proper location such that it was safe to transfer." R. Doc. 32-5 at 35:11-18; 55:14-22. Lastly, Defendants present the opinion of Capt. David Scruton[4] that the position of the vessel with respect to the platform was typical and reasonable under the circumstances. *See* R. Doc. 32-10. In sum, this evidence is sufficient to demonstrate there are issues of material fact as to whether the *M/V Emelie Rose* was positioned safely with respect to the offshore platform.

In view of the conflicting testimony and evidence regarding whether the vessel's positioning was reasonable at the time of Mr. Ausama's rope swing, the Court concludes that significant issues of fact exist such that partial summary judgment would not be appropriate.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Partial, Summary Judgment, R. Doc. 28, is hereby **DENIED**.

New Orleans, Louisiana, this 9th day of June, 2021.

UNITED STATES DISTRICT JUDGE

---

[4] Defendants aver Capt. Scruton has experience in swing rope transfers as a captain, deckhand, and passage and holds a vessel Master's Unlimited Certificate of Competency. R. 32 at 9.